UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION,

       Plaintiff,                        Case No. 13-11881
                                                 Honorable Thomas L. Ludington
v.

GLOBAL SUN LIMITED,

       Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT AND DIRECTING SUPPLEMENTAL BRIEFING AND SERVICE ON DEFENDANT**

On April 26, 2013, Hemlock Semiconductor Corporation (Hemlock) filed a complaint against Global Sun Limited (Global Sun), a Maltese corporation, and Isofotón S.A. (Isofotón), a Spanish corporation. Pl.'s Compl. ¶¶ 2, 3, ECF No. 1. Hemlock asserts that these two parties breached their obligations under two supply agreements.

Hemlock's claims against Isofotón have been stayed because Isofotón is involved in a voluntary bankruptcy proceeding in Spain. Global Sun, however, has not pled or otherwise defended itself against Hemlock's claims. Accordingly, default judgment will be entered on Hemlock's behalf, in an amount to be determined through supplementary briefing from the parties.

**I**

Between 2005 and 2008, Hemlock entered into two long term supply agreements with Lionberg & Company, Ltd. (Lionberg), which Lionberg then "transferred and assigned to Global Sun," effective June 1, 2008. Pl.'s Compl. ¶ 13. Isofotón acted as a guarantor for the first supply agreement at the time Lionberg entered into it, and continued to act as guarantor when

Global Sun assumed Lionberg's duties under the contract. For its part, Isofotón agreed to pay Lionberg's obligations (and then Global Sun's) "upon receipt of a written demand therefore, without any withholding, deduction, defense, counterclaim or set-off for any reason or on any account whatsoever." Isofotón acted in conjunction with another guarantor, and assumed responsibility for 33.3 percent of any obligations that came due.

The two supply agreements required Global Sun to "take or pay" for specified amounts of polycrystalline silicon, a product that Hemlock manufactures. *Id*. ¶ 14. Under the supply agreements, "Global Sun [was] required to pay the full purchase price for the Product scheduled to be purchased each year, regardless of whether Global Sun actually [took] delivery of the Product." *Id*.

Hemlock alleges that Global Sun did not satisfy its obligations under the supply agreements. In a January 12, 2012 letter, Hemlock notified Global Sun of "15 past-due invoices under the two Supply Agreements" as well as "Global Sun's failure to take Products required to be taken or paid for in 2011 under the Supply Agreements." *Id*. ¶ 18. The same day, Hemlock sent Isofotón a letter notifying it, as Guarantor, "of Global Sun's defaults under Supply Agreement I . . . ." *Id*. ¶ 19.

As of March 26, 2013, the defects had not been cured. At that point, Hemlock demanded "payment in full of all amounts" owed under the two long term supply agreements: "$163,113,050.00 in connection with Supply Agreement I and $129,064,923.80 in connection with supply Agreement II." *Id*. ¶ 21. Hemlock also notified Isofotón on March 26, 2013, that it was responsible "as Guarantor of 33.3 percent of Global Sun's obligations under Supply Agreement I, in the amount of $54,316,645.65." *Id*. ¶ 22. When Hemlock received no response from either party, it filed this action.

**B**

Isofotón then filed a supplemental suggestion of bankruptcy, emphasizing a "foreign insolvency proceeding pending in . . . Malaga, Spain." Isofotón Supp. Br. 1, ECF No. 27. The United States Bankruptcy Court for the Northern District of Ohio had entered an order recognizing Isofotón's foreign insolvency proceeding, and this order gave rise to the protections of § 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(1) (establishing that a voluntary petition for bankruptcy automatically "operates as a stay" of the continuation of any judicial proceeding "to recover a claim against the debtor that arose before the commencement" of the bankruptcy case). Accordingly, Hemlock's claims against Isofotón were stayed; on the other hand, Hemlock was allowed to pursue its claims against Global Sun (which was not protected by § 362). *See* Apr. 15, 2014 Op. & Order, ECF No. 40.

**C**

Global Sun's involvement in this case has been unusual. On October 15, 2013, Global Sun filed a letter on the docket entitled "Answer to the claim." Signed by Mr. Andrey Baranenko, a purported Director of Global Sun, the letter indicated that Global Sun was "notified in Malta . . . on the Service Abroad of Judicial and Extrajudicial documents in Civil or Commercial Matters." Oct. 10, 2013 Letter, ECF No. 24. Mr. Baranenko explained that "the notification is irregular in that it is based on an international instrument to which Malta has not yet formally acceded." *Id*. No attorney filed an appearance on behalf of Global Sun in conjunction with this letter.

Asserting that Mr. Baranenko's letter does not constitute a formal answer to the complaint, Hemlock moved for a Clerk's entry of default on April 23, 2014. The request was denied, however, because "21 days ha[d] not passed since [Global Sun] was served on [April 18,

2014]." *See* Apr. 28, 2014 Denial, ECF No. 43. On April 30, 2014, Hemlock renewed its request for a Clerk's entry of default as to Global Sun. In this renewed request, Hemlock established that "Global Sun was served with the Summons and Complaint in this action on September 25, 2013."[1] Pl.'s Request Default 1, ECF No. 44. Accordingly, "Global Sun's deadline to appear in this action and serve an answer to the Complaint . . . expired on October 16, 2013." *Id*. at 2; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i). Upon consideration of Hemlock's renewed request, the Clerk entered "[t]he default of [Global Sun] for failure to plead or otherwise defend . . . ." Clerk Entry Default, ECF No. 45.

Global Sun filed another letter on the docket on May 21, 2014. Again signed by Mr. Baranenko, the letter indicates that Global Sun "received a copy of the Plaintiff's Request for Clerk's entry of Default" on April 2, 2014. May 16, 2014 Letter 1, ECF No. 46. Global Sun indicated that "it had contested in a timely manner" the service of process it "received on 25th September 2013 drawing attention to the fact that the notification was made irregularly . . . ." *Id*. Global Sun also indicated that it "will act as a pro-se litigant in this case." *Id*.

Not addressing this letter, after the Clerk entered Global Sun's default, Hemlock filed a motion for default judgment on June 3, 2014. Global Sun, in response to the motion, filed a third letter on June 17, 2014. This letter is also signed by Mr. Baranenko. Global Sun's letter attempts "to draw the attention of the Court" to its "point of view about the claim." June 17, 2014 Letter 1, ECF No. 48. Global Sun "reject[s] the allegation that [it] failed to plead or otherwise defend itself[,]" pointing to the October 15, 2013 Letter it filed on the docket and claiming this "inform[ed]" Hemlock about the "mistake of notification" and "[s]ince then, [Global Sun] had been waiting to be notified in a formally correct way." *Id*. According to Mr.

---

[1] April 18, 2014, the date originally utilized by the Clerk to ascertain when default could be entered, was the date Global Sun was served with this Court's Opinion and Order lifting the stay of Hemlock's claims against Global Sun. *See* Cert. of Service, ECF No. 41.

- 4 -

Baranenko, "[e]ven though Global Sun was not asked to plead its case . . . it again sent a letter to the Court on 17 May 2014 repeating the formal error of the initial notification, stating that it will act as a pro-se litigant . . . ." *Id*. Global Sun summarizes that because Hemlock "consistently" ignored its letters, it "was deprived of its right of defense and is now under threat of a Default Judgment." *Id*. at 2.

II

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Rule 55(a) establishes that when a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Upon entry of default, if the plaintiff's claim is for a sum certain "or a sum that can be made certain by computation," the clerk must enter judgment "on the plaintiff's request," which must be accompanied by "an affidavit showing the amount due." Fed. R. Civ. P. 55(b)(1).

Where a plaintiff's claim is not for a sum certain, or a sum that can be made certain by computation, the party seeking default judgment "must apply to the court . . . ." Fed. R. Civ. P. 55(b)(2). Under Rule 55, "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id*. "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." *Id*.

III

The first question is whether Hemlock is entitled to default judgment against Global Sun. If so, the next question is whether a hearing is necessary to determine damages. Each question will be addressed in turn.

A

Rule 55 makes clear that default judgment is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a). Here, Global Sun's Director, Mr. Baranenko, asserts that Global Sun has defended itself with his letters. *See* June 17, 2014 Letter 1. But this assertion cuts against decades of settled federal law.

Indeed, "neither a corporate officer nor a shareholder may appear on behalf of a corporation," *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 603 (6th Cir. 2005), because "[a] corporation must be represented by legal counsel and cannot proceed *pro se*." *Reich v. Pierce*, 45 F.3d 431, 1994 WL 709292, at *2 n.1 (6th Cir. 1994) (per curiam); *see also Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney."). So although Mr. Baranenko did file letters on the Court's docket, this does not constitute pleading or defending against Hemlock's complaint.

And when corporations do not plead or otherwise defend through an attorney, the entry of default—and then default judgment—is appropriate. In *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975), the Second Circuit addressed a situation where a district court entered default judgment against RAC, a New York corporation. *Id.* at 589. There, "[t]he only purported appearance of RAC . . . has been through its officers, Tserpes, Martos and Hamos,

none of whom is an attorney." *Id*. The Second Circuit affirmed the default judgment against RAC, emphasizing that corporations "may not appear in a lawsuit against it except through an attorney," and that "where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55 . . . ." *Id*; *see also Ohio & Vicinity Carpenters' Fringe Ben. Funds, Inc. v. R & R Contractors, LLC*, No.12-1785, 2013 WL 331489, at *1 (N.D. Ohio Jan. 29, 2013) (denying motion to vacate default judgment against an unrepresented corporation because "a corporation . . . cannot participate in litigation except through counsel.").

The facts here are identical to those in *Research Automation Corp.*, and the result will be the same. Global Sun has not appeared through counsel, as required, and instead has indicated its intention to proceed pro se. *See* May 16, 2014 Letter 1. Moreover, although Mr. Baranenko has thrice filed letters on the docket, "where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55 . . . ." *Research Automation Corp.*, 521 F.2d at 589. Default judgment will be entered against Global Sun because it consistently has failed to plead or otherwise defend the case.

**B**

At this point the question becomes whether a hearing is necessary to determine the amount Global Sun owes Hemlock. Hemlock asserts that no hearing is warranted because it "is entitled to a default judgment for the damages identified in its Complaint, which follows directly from the Supply Agreements' 'take or pay' provisions." Pl.'s Mot. 11, ECF No. 47.

As Hemlock points out, "take or pay" provisions allocate risk between contracting parties. The Fifth Circuit explained how these provisions operate when included in contracts concerning the production and sale of natural gas:

> The purpose of the take-or-pay clause is to apportion the risks of natural gas production and sales between the buyer and seller. The seller bears the risk of

> production. To compensate seller for that risk, buyer agrees to take, or pay for if not taken, a minimum quantity of gas. The buyer bears the risk of market demand. The take-or-pay clause insures that if the demand for gas goes down, seller will still receive the price for the Contract Quantity delivered each year.

*Universal Res. Corp. v. Panhandle E. Pipeline Co.*, 813 F.2d 77, 80 (5th Cir. 1987). The terms of a take-or-pay clause are "fully enforceable." *Id*. The Tenth Circuit has emphasized that when considering contracts with take-or-pay provisions (where the buyer is in breach), the seller's damages are "measured by [the] obligation to pay—the value of which is the contract price in effect at the time such deficiency occurred multiplied by the difference between the contract quantity and the actual quantity of [product] purchased for any year [buyer] was in breach . . . ." *Prenalta Corp v. Colorado Interstate Gas Co.*, 944 F.2d 677, 690 (10th Cir. 1991).

Under the first supply agreement between Hemlock and Global Sun, which covers the period from "January 1, 2006 through December 31, 2015," Global Sun agreed to purchase the quantity of polycrystalline silicon set forth in Exhibit B to the contract. Long-Term Agreement I, at 1, *attached as* Exhibits RE Compl. Ex 1, ECF No. 10. Exhibit B to the first Long-Term Agreement provides the quantity of polycrystalline silicon Global Sun agreed to purchase, which was 975,000 kilograms each year from 2008 through 2015 (the only years Global Sun was a party to the agreement). *Id*. at 18.

Under the second supply agreement, which covers the period from "January 1, 2009 through December 31, 2018," Global Sun agreed to purchase the quantity of polycrystalline silicon set forth in Exhibit B to that contract. Long-Term Agreement II, at 1, *attached as* Exhibts RE Compl. Ex. 2. Exhibit B to the second Long-Term Agreement provides the quantity of polycrystalline silicon Global Sun agreed to purchase each year from 2009 through 2018, at 360,000 kilograms per. *Id*. at 18.

As previously noted, Hemlock sent Global Sun a letter on January 12, 2012, identifying fifteen past-due invoices from 2011. The total amount for past-due invoices on Long-Term Agreement I is $5,275,500. *See* Jan. 12, 2012 Letter 1, *attached as* Exhibits RE Compl. Ex. 5. The total amount for past-due invoices on Long-Term Agreement II is $2,749,413.80. *Id*. Accordingly, Global Sun owes a total of $8,024,913.80 on past due invoices from 2011.

Hemlock's January 12 letter also established that Global Sun did not take "258,000kg of Products required to be taken or paid for in 2011 pursuant to Supply Agreement I" and "103,000kg of Products required to be taken or paid for in 2011 pursuant to Supply Agreement II." *Id*. at 2. Long-Term Agreement I required Global Sun to pay $36 per kilogram of polycrystalline silicon taken in 2011. *See* Long-Term Agreement I, at 18. At $36 per kilogram, for 258,000 kilograms, Global Sun owes $9,306,000 for unclaimed product in 2011 under Long-Term Agreement I. Long-Term Agreement II required Global Sun to pay $46 per kilogram of polycrystalline silicon taken in 2011. *See* Long-Term Agreement II, at 18. At $46 per kilogram, for 103,000 kilograms, Global Sun owes $4,738,000 for unclaimed product in 2011 under Long-Term Agreement II. Under both agreements together, Global Sun owes $14,044,000 for unclaimed polycrystalline silicon in 2011. So, together with the past-due invoices, Global Sun owes Hemlock a total of $22,068,913.80 under both Long-Term Agreements for 2011.

After 2011, the computations become less involved. Each successive year under the Long-Term Agreements, Global Sun was required to pay one dollar less for each kilogram of polycrystalline silicon. For example, while Global Sun was required to pay $36 per kilo in 2011 under Long-Term Agreement I, it was required by that Agreement to pay only $35 per kilo in 2012. *See* Long-Term Agreement I, at 18. Global Sun was then required to pay $34 per kilo in 2013, $33 per kilo in 2014, and $32 per kilo in 2015. *Id*. Likewise, the amount due under Long-

Term Agreement II was reduced by $1 per kilo each year, from $46 per kilo in 2011 to $39 per kilo in 2018. *See* Long-Term Agreement II, at 18. The quantities of polycrystalline silicon Global Sun was responsible to take or pay for each year remained consistent under both contracts from 2011 going forward: 975,000 kilograms per year under Long-Term Agreement I, and 360,000 kilograms per year under Long-Term Agreement II. *See id*; Long-Term Agreement I, at 18.

So computing the amount Global Sun owes under each Long-Term Agreement (2012 through 2015 under Long-Term Agreement I, and 2012 through 2018 for Long-Term Agreement II) becomes a simple exercise in multiplying the specified quantities by the price per kilogram for that year. Pursuant to this arithmetic, Global Sun owes $130,650,000 under Long-Term Agreement I for product Global Sun was required to take or pay for from 2012 through 2015,[2] and it owes $105,840,000 under Long-Term Agreement II for product it was required to take or pay for from 2012 through 2018.[3]

Taken together, pursuant to the Court's calculations, Global Sun owes Hemlock $258,558,913.80,[4] without the application of the 12% annual "Finance charges" outlined in paragraph six of both Long-Term Agreements. *See* Long-Term Agreement I, at 2; Long-Term Agreement II, at 2.

---

[2] This amount was calculated by adding the amounts Global Sun owes for each year: $34,125,000 in 2012 ($35/kilo multiplied by 975,000 kilos); $33,150,000 in 2013 ($34/kilo multiplied by 975,000 kilos); $32,175,000 in 2014 ($33/kilo multiplied by 975,000 kilos); and $31,200,000 in 2015 ($32/kilo multiplied by 975,000).

[3] This amount was calculated by adding the amounts Global Sun owes for each year: $16,200,000 in 2012 ($45/kilo multiplied by 360,000 kilos); $15,840,000 in 2013 ($44/kilo multiplied by 360,000 kilos); $15,480,000 in 2014 ($43/kilo multiplied by 360,000 kilos); $15,120,000 in 2015 ($42/kilo multiplied by 360,000 kilos); $14,760,000 for 2016 ($41/kilo multiplied by 360,000 kilos); $14,400,000 in 2017 ($40/kilo multiplied by 360,000 kilos); and $14,040,000 in 2018 ($39/kilo multiplied by 360,000 kilos).

[4] Calculated by adding past-due invoices from 2011 ($8,024,913.80), amount owed on unclaimed polycrystalline silicon in 2011 ($14,044,000), the amount owed for unclaimed polycrystalline silicon from 2012 through 2015 under Long-Term Agreement I ($130,650,000), and the amount owed for unclaimed polycrystalline silicon from 2012 through 2018 ($105,840,000).

And here is where the Court must stop, because these figures do not match up with the figures contained in Hemlock's March 26, 2013 correspondence to Global Sun. *See* Mar. 26, 2013 Letter 1, *attached as* Exhibit RE Compl. Ex. 7. The Court is also unclear whether the application of 12% interest under the Long-Term Agreements should be added and compounded annually, or simply applied to the final sum at one time. Also, should interest be added at this point on the sums payable in future years? Should interest accrue on those amounts at all? Should those future sums be reduced to present value? Finally, the Court's calculations included the Net Price Per Kilogram as outlined by the Long-Term Agreements, rather than the Gross Price Per Kilogram, because it assumes the Advance Payments outlined in both Agreements were received and applied against the price of the products; Hemlock has never indicated to the contrary. All of these questions remain unanswered.

A hearing is not necessary to determine the appropriate amount of damages, but Hemlock certainly must do more than provide a net total Global Sun owes with a general claim that "Global Sun is also liable for interest . . . in the amount of 12% per annum . . . ." Pl.'s Mot. 14. Hemlock will be directed to file supplemental briefing no longer than five pages, outlining exactly how much money it believes it is entitled to, and most importantly, why.

Global Sun will also have an opportunity to contest the amount Hemlock is entitled to (not the fact that Hemlock is so entitled, however, as that has already been determined). Global Sun is warned that a letter from its corporate director will not suffice. If Global Sun wishes to comment on the amount it owes Hemlock under the two Long-Term Agreements, it must do so through counsel that has entered an appearance in the case. Otherwise, the amount owed will be determined by Hemlock's submission alone.

## IV

Accordingly, it is **ORDERED** that Hemlock's motion for default judgment, ECF No. 47, is **GRANTED** in part. The Court concludes that default judgment is warranted on Hemlock's behalf against Global Sun.

It is further **ORDERED** that Hemlock is **DIRECTED** to serve a copy of this Opinion and Order on Global Sun, and then file proof of service on the docket.

It is further **ORDERED** that Hemlock is **DIRECTED** to file supplemental briefing, no longer than five pages, indicating the appropriate amount it is entitled to pursuant to Global Sun's default. This brief is due no later than **July 28, 2014**. Hemlock is further **DIRECTED** to serve a copy of that supplemental brief on Global Sun and file proof of service on the docket.

It is further **ORDERED** that Global Sun is **DIRECTED** to file supplemental briefing, no longer than five pages, contesting the amount Hemlock is entitled to. This supplemental brief will only be accepted if it is filed through counsel that has made an official appearance in the case, and it is due no later than **August 11, 2014**.

Dated: July 15, 2014                               s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means on July 15, 2014.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS